# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| Plaintiff, | )    **CIV -** _____ |
| v. | )<br>)    **COMPLAINT** |
| ALBUQUERQUE-AMG SPECIALTY HOSPITAL, LLC, and ACADIANA MANAGEMENT GROUP, LLC d/b/a *AMG Integrated Healthcare Management Hospital System*, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct alleged unlawful employment practices on the basis of sex and to provide appropriate relief to Moriah Smith who was adversely affected by such practices during her employment with Acadiana Management Group, LLC and Albuquerque-AMG Specialty Hospital, LLC. ("Defendants" or "AMG"). As alleged with greater particularity below, the Equal Employment Opportunity Commission ("EEOC") alleges that Moriah Smith was sexually harassed while working at AMG Specialty Hospital, LLC., including, but not limited to, unwelcome verbal harassment, sexual texting, and inappropriate touching, which created a hostile work environment for her because of her sex. The EEOC also alleges that Moriah Smith suffered a constructive discharge because of the hostile environment she was subjected to and Defendants' failure to prevent or remedy the unlawful employment practices.

1

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5 (f)(1), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of New Mexico.

## PARTIES

3. Plaintiff, EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. Defendants operate a post-acute care specialty hospital in Albuquerque, New Mexico.

   a. At all relevant times, the Defendants have been continuously doing business in the State of New Mexico, and each Defendant has separately or jointly, continuously employed at least 15 employees.

   b. Further, Defendants have been a joint employer and/or an integrated enterprise that employed Moriah Smith, the female AMG employee adversely affected by the unlawful employment practices.

   c. Acadiana Management Group, LLC provides oversight and approval authority on promotions and hiring decisions for key personnel at Albuquerque-AMG Specialty Hospital, LLC.

    d.  Corporate officers from the operations, human resources and legal departments of Acadiana Management Group, LLC provided oversight and were involved in the internal investigation of Moriah Smith's sex harassment complaint, including the findings and decisions regarding actions taken by Defendants at the conclusion of their internal investigation.

    e.  Acadiana Management Group, LLC operates at least ten other affiliated specialty hospitals, throughout the United States in a similar manner as Albuquerque-AMG Specialty Hospital.  Management at each affiliated specialty hospital are hired and directly report to the corporate officers at Acadiana Management Group, LLC as part of their integrated enterprise.

5.    At all relevant times, the Defendants have continuously been and are now employers engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-(b), (g), and (h).

## GENERAL ALLEGATIONS

6.    More than thirty days prior to the institution of this lawsuit, Moriah Smith filed a charge with the EEOC alleging violations of Title VII by AMG.

7.    The EEOC investigated the Charge of Discrimination filed by Smith.

8.    On October 14, 2020, the EEOC issued to Defendants a Letter of Determination finding reasonable cause to believe that Title VII was violated.

9.    The EEOC's Letter of Determination included an invitation for Defendants to join with the EEOC in informal methods of conciliation in an endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. The Defendants responded with a letter to the EEOC stating they declined to participate with the EEOC in the conciliation process.

11. On November 9, 2020, the EEOC issued Defendants a Notice of Failure of Conciliation.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## GENERAL ALLEGATIONS

13. Since at least 2018, Defendants have engaged in unlawful employment practices at Albuquerque-AMG Specialty Hospital, in violation of Section 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a).

14. Acadiana Management Group, LLC currently employs in excess of five hundred employees in their affiliated hospitals.

15. Moriah Smith was hired in July 2017 at Albuquerque-AMG Specialty Hospital as a Case Manager.

16. Moriah Smith was thereafter promoted to Community Liaison & Marketing at Albuquerque-AMG Specialty Hospital in May 2018.

17. In August 2018, Smith received another promotion to the position of Director of Case Management at Albuquerque-AMG Specialty Hospital.

18. During this time, Moriah Smith and Case Management employees at Albuquerque-AMG Specialty Hospital were directly supervised by Kendra Camp, the CEO at Albuquerque-AMG Specialty Hospital.

19. When Moriah Smith was first hired in 2017, she met and worked with Diosmedys Linares ("Linares"), who at the time was a co-worker as a Wound Care Nurse at Albuquerque-AMG Specialty Hospital.

20. Thereafter, at Albuquerque-AMG Specialty Hospital, Linares was promoted in 2018 to Director of Quality and Management by CEO Camp.

21. Subsequently, Linares was promoted on June 2, 2019 to Chief Clinical Officer ("CCO") at Albuquerque-AMG Specialty Hospital. Although CEO Camp recommended Linares for this position, only the corporate officers at Acadiana Management Group, LLC could approve the promotion.

22. As CCO, Linares supervises nursing, therapy, and pharmacy departments at Albuquerque-AMG Specialty Hospital.

23. Prior to his promotion to CCO, CEO Camp met with Linares in May or June of 2019 to discuss his request to be considered for the open position.

24. In that meeting of May or June 2019 to discuss a possible promotion to CCO, CEO Camp warned Linares that she had heard of his past flirtatious behavior and that such flirtatious behavior would not be tolerated from someone in the role of CCO.

25. After Linares' promotion in June 2019, CEO Camp was already aware that at least two AMG employees, Victoria Chavez and Moriah Smith, had reported being the subject of sexual physical and verbal attention from Linares; and that Smith had also commented to CEO Camp that Linares behavior was perverted.

26. In response to Smith's comments about Linares' behavior being perverted, CEO Camp stated, "I've heard so many things, I should not have promoted him."

27. During this period, from 2018 – 2019, several AMG employees were aware of Linares' inappropriate sexual conversations and touching female employees in a sexual manner during work hours in the offices at the Albuquerque-AMG Specialty Hospital location.

28. Prior to Linares's promotion, CEO Camp told another AMG employee that she had warned Linares "to keep his d**k in his pants."

29. Both Smith and Linares reported directly to CEO Camp within the chain-of-command at the Albuquerque-AMG Specialty Hospital location.

30. Smith was subjected to sexual comments and conduct by Linares over the period from 2018 through about mid-August 2019, including but not limited to:

    a. Linares touched Smith's breast and buttocks on about 4-5 occasions;

    b. one day in June 2019, Linares walked into Smith's office and put his finger between her breasts;

    c. on other occasions, Linares would walk into Smith's office and grab her breast or butt and walk out as if nothing happened;

    d. Linares repeatedly made comments about her breasts, including saying "I love your breasts," "I would like to grab those breasts," "your breasts look real nice," and "that dress looks good with those breasts;" and

    e. Linares also requested that Smith touch his penis on more than one occasion.

31. After Linares became CCO, sometime in early July 2019, Linares began sending Smith sexually inappropriate text messages to Smith's work cell phone, including the following texts:

    a. on July 3, 2019 stating, "I wanted to see whats under that hot dress;"

    b. on the same day, stating "I still have time. Wanna show me;" and

    c. on July 17, 2019 Linares messaged "I want to see what is under that today." (Referencing her dress, she wore that day).

32. On August 2, 2019, Smith went to Linares' office to discuss a patient complaint. Linares came from around his desk and closed the door to his office, standing in front of the door which prevented her from leaving the office. Linares then asked her if she wanted to touch it, meaning his penis. Linares then grabbed her hand to place it on his penis and she pulled her hand away. Linares also tried to kiss her. Smith pushed Linares out of the way and punched him twice in the chest, telling him to "cut his shit out" and ran from his office.

33. Later the same day, Linares went to Smith's office and asked if she "liked that" and if she wanted to look at it, referring to his penis. Smith screamed at him to get out of her office.

34. After both office incidents, Smith texted Linares to "quit the shit."

35. The next day, August 3rd, Smith texted Linares telling him to stop his unwelcome sexual conduct.

36. Linares' sexual comments, texts and conduct, including touching of intimate body parts were unwelcome by Smith.

37. On August 21, 2019, Smith had a meeting with CEO Camp wherein Smith told her of the sexual harassment by Linares. Smith also told CEO Camp about the physical assault by Linares that had taken place on August 2, 2019.

38. During this same August 21, 2019 meeting, CEO Camp apologized and told Smith that Camp was aware of Linares past inappropriate behavior.

39. After the meeting, CEO Camp reported Smith's complaint to HR Administrative Assistant for Albuquerque-AMG, Robin Stendel-Freels ("HR Stendel-Freels"). Further, CEO Camp instructed Smith to meet with Stendel-Freels and provide him the details of her complaint of sex harassment by Linares.

40. On about August 21, 2019, HR Stendel-Freels met with Smith to discuss her complaint and requested to see all the text messages between her and Linares. As part of his investigation, HR Stendel-Freels then took copies of the text messages off Smith's work cell phone and placed Linares on administrative leave from Friday, August 23, 2019 to Monday, August 26, 2019.

41. On August 26, 2019, HR Stendel-Freels and CEO Camp met with Smith to report that they were not able to substantiate Smith's sex harassment complaint and the matter had been closed.

42. At the conclusion of this meeting with Smith on August 26, 2019, HR Stendel-Freels provided her a dress code policy with a section of the policy being highlighted on how to dress for work. At this point in the meeting, Smith felt that HR Stendel-Freels implied that (1) she dressed inappropriately and (2) how she dressed was the reasons she had been sexually harassed by Linares.

43. At no time during this meeting of August 26, 2019, which had been called to discuss the findings of the 4-day sex harassment investigation, did HR Stendel-Freels tell Smith that Linares was being disciplined as a result of anything learned during the investigation.

44. During the investigation, AMG took the word of the sexual harasser over the word of Smith, despite the evidence of the very descriptive text messages.

45. After the August 2019 sex harassment investigation by AMG, and during EEOC's investigation, both HR Stendel-Freels and Linares admitted the text messages violated AMG's sex harassment policies.

46. Linares was never specifically disciplined for his sexual harassment of Smith.

47. Unknown to Smith, on August 26, 2019, AMG only issued discipline to Linares for "unprofessional conduct"; "perceived aggression"; and "failure as a leader to assure a non-hostile work environment."

48. AMG returned Linares to his same management position as CCO on August 26, 2019.

49. In an interdisciplinary staff meeting the morning of August 26, 2019, Linares yelled at and berated Smith in front of all their subordinate staff. Additionally, Linares met with CEO Camp after that morning meeting for the purposes of requesting that Smith be disciplined for arriving late to the meeting.

50. The next day, Smith reported to HR Stendel-Freels that she could not stop crying and was given permission to take the remainder of the day off from work.

51. On August 29, 2019, Smith met with HR Stendel-Freels and the corporate HR officer, Vonda Broussard, from Acadiana Management Group, LLC (taking part in the meeting by telephone) to submit her resignation. During the meeting Smith explained to HR Stendel-Freels the reasons for her resignation were because: she no longer wanted to work for AMG because she would have to continue to work with her harasser, Linares; and, she no longer felt safe working there.

52. Instead of allowing her to resign immediately, HR Stendel-Freels reminded her that AMG required all resigning administrative professionals to give 30 days' notice before leaving or lose their accumulated employee benefits.

53. Due to AMG's directive, Moriah Smith remained employed with AMG until September 6, 2019 but was forced to resign due to the intolerable working conditions AMG imposed on her.

## FIRST CLAIM FOR RELIEF

**[Sexual Harassment/Hostile Work Environment (42 U.S.C. § 2000e-2(a)]**

54. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

55. Defendants discriminated against Moriah Smith in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by subjecting her to sexual harassment and creating a hostile work environment because of her sex, female.

56. The offensive conduct described in the preceding paragraphs was sufficiently severe or pervasive to alter the terms and conditions of employment for Moriah Smith.

57. Defendants knew of, or in the exercise of reasonable care should have known of, the hostile or sexually offensive work environment suffered by Moriah Smith because of her sex, female.

58. Defendants' management knew of the hostile or sexually offensive behavior by Linares in the work environment at AMG, but Defendants negligently failed to take timely preventative or remedial actions to end the behavior which violated and Title VII

59. Defendants failed to take reasonable measures to prevent and promptly correct sexually harassing behavior in the workplace.

60. The effect of the practices complained of above has been to deprive Moriah Smith of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex.

61. The unlawful employment practices of AMG complained of above were intentional.

62. The unlawful employment practices of AMG complained of above were done with malice or with reckless indifference to the federally protected rights of Moriah Smith and other female employees of Defendants.

## SECOND CLAIM FOR RELIEF

### [Constructive Discharge– 42 U.S.C. 2000e-2(a)]

63. The allegations contained in the foregoing paragraphs are hereby incorporated by reference with the same force and effect as if fully set forth herein.

64. Beginning in about August/September 2019, AMG discriminated against Moriah Smith, a female employee who was subjected to sex harassment by a CCO of the hospital, in violation of Title VII, 42 U.S.C. § 2000e-2(a), by constructively discharging her because of her sex in September 2019.

65. Moriah Smith was qualified to perform her job of Director of Case Management at Albuquerque-AMG Specialty Hospital and was performing her duties in a satisfactory manner at the time of her constructive discharge

66.     On August 26, 2019, AMG told Moriah Smith that she should continue to come to work as if nothing had happened because according to AMG, her complaint of sex harassment had not been substantiated. Further, in conjunction with the August 26, 2019 meeting to discuss corporate's investigation not finding sex harassment, both the HR investigator and CEO Camp implicitly blamed the harassment complaint on the way Smith dressed at work by handing her a highlighted copy of AMG's dress code.

67.     AMG further explained in the August 26, 2019 meeting with Smith that she would continue to work with the harasser, CCO Linares. Smith then explained to AMG the reasons for her resignation. Smith no longer wanted to work for AMG in a position where she would have to continue to work with her harasser, Linares; and, she did not feel safe continuing to work there if he was still working for AMG.

68.     When AMG disciplined Linares in August 2019, it was not for his sexual harassment of Smith but for "unprofessional conduct," "perceived aggression" (blocking female employee's exit from an office) and "failure as a leader to assure a non-hostile work environment."

69.     On the same day that AMG returned Linares to work, in an interdisciplinary staff meeting, Linares yelled at and berated Smith in front of all their subordinate staff. Later the same day, Linares met with CEO Camp to request that Smith be disciplined for arriving late to the interdisciplinary staff meeting.

70.     The working conditions created by the unlawful actions alleged in the preceding paragraphs were so intolerable that a reasonable female employee, subjected to such sex harassment, including a physical assault, subjected to an employer investigation that was

neither preventive or remedial but instead victimized and victim shamed the complainant, and required the complainant to continue to work in an environment where she felt threatened, unsafe, and not protected from further harassment would not have continued to subject herself to choose between continuing her employment and her own safety.

71. The totality of the circumstances leading to Moriah Smith's constructive discharge was proof that AMG continued to discriminate against her because of her sex, female, in violation of Title VII.

72. The unlawful employment practices by AMG described above were intentional.

73. The unlawful employment practices by AMG complained of herein were done with malice or with reckless indifference to the federally protected rights of Moriah Smith.

74. As a result of the events and actions described above, Moriah Smith was deprived of equal employment opportunities, continued employment as the of Director of Case Management at Albuquerque-AMG Specialty Hospital, suffered emotional distress, and was otherwise adversely affected because of her sex, female in violation of Title VII.

## JURY TRIAL DEMAND

75. The EEOC requests a jury trial on all questions of fact raised by its complaint.

## PRAYER FOR RELIEF

76. Wherefore, the Commission respectfully requests that this Court:

    A. Grant a permanent injunction enjoining Defendants, its officers, agents, servants, employees, successors, assigns, and all persons in active concert

| | |
|---|---|
| | or participation with them, from engaging in from engaging in any employment practice that permits the harassment or constructive discharge of employees because of sex and any other employment practice which discriminates on the basis of sex. |
| B. | Order Defendants to institute and carry out policies, practices and programs which provide equal employment opportunities for women and which eradicate the effects of Defendants' past and present unlawful employment practices, including sex discrimination. |
| C. | Order Defendants to make whole Moriah Smith by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, reinstatement and other affirmative relief necessary to eradicate the effects of its unlawful employment practices. |
| D. | Order Defendants to make whole Moriah Smith by providing compensation for past and future pecuniary losses, including but not limited to, healthcare and other expenses resulting from the unlawful employment practices described in the foregoing paragraphs above, in amounts to be determined at trial. |
| E. | Order Defendants to make whole Moriah Smith by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described in the foregoing paragraphs above, including but not limited to, emotional pain, suffering, inconvenience, |

     mental anguish, humiliation, loss of enjoyment of life, and other non-pecuniary losses, in amounts to be determined at trial.

F. Order AMG to pay Moriah Smith punitive damages for AMG s malicious and/or reckless conduct described above, in amounts to be determined at trial.

G. Grant such other and further relief as the Court deems just, necessary, equitable, and proper in the public interest.

H. Award the Commission its costs in this action.

DATED April 20, 2021.

           GWENDOLYN YOUNG REAMS
           Acting General Counsel

           EQUAL EMPLOYMENT OPPORTUNITY
           COMMISSION
           1801 L Street, NW
           Washington, D.C.  20507

           MARY JO O'NEILL
           Regional Attorney

           EQUAL EMPLOYMENT OPPORTUNITY
           COMMISSION
           Phoenix District Office
           3300 North Central Avenue
           Suite 690
           Phoenix, Arizona 8501

           LORETTA MEDINA
           Supervisory Trial Attorney

           */s/ Jeff A. Lee*
           Jeff A. Lee
           Senior Trial Attorney
           EQUAL EMPLOYMENT OPPORTUNITY
           COMMISSION

Albuquerque Area Office
505 Marquette NW, Suite 900
Albuquerque, New Mexico 87102
(505) 738-6723
Jeff.Lee@eeoc.gov

*Attorneys for Plaintiff EEOC*